# SCHOOL DIST. NO. 1. IN MILTON *v.* BRAGDON & a.

In a suit by a corporation, pleading to the merits admits the plaintiffs to be a corporation capable of sustaining the suit; and under the general issue they will not be required to show their corporate existence.

In general, the right of a party to recover must be tried by its validity at the time the action is commenced. But if the evidence arising after the commencement of the suit be immaterial, the verdict will not be set aside on account of its admission.

By the Rev. Stat., chap., 73, § 7, it is provided that no person shall have a right to send to, or receive any benefit from any school in a district in which he is not a resident, without the consent of such district. *Held*, under this statute, that minors who were sent into a district by their father, to reside with an aunt, under indentures of apprenticeship, but which were made for the only purpose of sending the children to the school, were trespassers and liable to an action by the district.

Infants are liable in actions arising *ex delicto*, whether founded upon trespass or assault, or upon fraud.

The court, after its adjournment, may communicate with a jury to whom a case has been submitted, upon matters of law, at their request. The communications are in the nature of new instructions, and, being returned into court by the jury, can be excepted to in the same manner as if they had been given in open court.

The length of time that a jury shall be kept together, and whether they shall be discharged or not, without agreeing upon a verdict, must be left to the sound discretion of the court before whom the case is tried; and this court will not interfere with that discretion, unless a clear case of injustice shall be made to appear.

It is not the practice in this State to poll the jury, and a verdict will not be set aside because the court refused a motion to that effect.

School District No. 1, in Milton v. Bragdon.

TRESPASS, on an appeal from the judgment of a justice of the peace. The plaintiffs alleged that the defendants with force and arms, broke and entered their close, which was described, and disturbed their school.

Plea, the general issue.

The defendants, who are minors, of the ages of twelve and fourteen years, appeared by Mr. Clark, their guardian *ad litem*, appointed by the justice, and jointly pleaded not guilty.

The plaintiffs, to prove their due organization as a district, introduced the records of the town of Milton, wherein there appeared a warrant for a town meeting on the third of November, 1828. One of the articles was, " to see if they will choose a committee to divide said town into school districts." The return of the warrant was in this form: " Milton, Nov. 3, 1828. We the subscribers, selectmen of Milton, certify that the written notification has been posted up fifteen days prior to said meeting, according to law, for the within named purposes," and was signed by all the selectmen.

At the meeting, a committee of nine persons was appointed to divide the town into school districts. At an adjournment of the meeting, a report was presented, signed by seven only of the committee, and it was " voted to accept of the report this day presented by the committee appointed by the town of Milton to divide said town into school districts, and that the town be now considered divided into ten school districts, butted and bounded as reported by said committee." The report is then recorded in the town book, in which it is said that district number one shall comprise lots twenty-four, twenty-six, &c., (enumerating fifteen numbers more) one half of twenty-seven, and that part of forty-nine and fifty lying west of Branch River, sixty-six acres off easterly end of sixty-five, fifty-five acres off easterly end of each of the lots sixty-one and sixty-three, and part of sixty-seven lying east of the pond in the third division, and one hundred and nineteen and that part of one hundred and twenty lying west of said Branch River, in the fourth division, together with the inhabitants residing thereon. The other districts were described in a similar manner.

To this evidence the defendants objected, that the warrant for the town meeting and the return upon are it insufficient; that two of the committee did not sign the report; and that neither the report nor the vote shows a division of the territory of the town into school districts, and that the description is bad for uncertainty. The objections were overruled.

The writ was dated June twelfth, 1850, and the plaintiffs offered in evidence a vote of the district, passed at a meeting holden June twentieth, 1850, that the district were not willing the defendants should attend the school; that Ellis, the prudential committee, take legal measures to prevent their attending, and that the district ratify his doings in commencing this suit. To this evidence the defendants objected, but it was admitted.

It appeared that the defendants' father had for many years owned a farm in district number one, on which he resided, and that a sister of his resided on a farm owned by her in the same district, and very near by. Before the twentieth of March, 1850, the father sold his farm, and, about that time, he removed, with his wife and daughter and household goods and a part of his stock, to the house of his wife's father in the neighboring district, number five, where he proposed to remain until he should purchase again. He left at his former barn, in district number one, some of his cattle, and he left at the house of his sister in that district his two sons, the defendants. The evidence tended to prove that, in the first instance, it was expected that they should take care of their father's cattle, at his former barn, take care of his sister's cattle, and do such other services for her as boys of their age could do, and go to school when there was one. After the wintering season for cattle was past, the evidence tended to prove that the boys continued at their aunt's house, upon an agreement that they should go to school and render her such services as they could. After the school commenced in district number one, early in June, objection was made to these boys attending the school, and their father, at his sister's request, bound the boys to her for two years by indenture, in which their father covenanted for their faithful service, and his sister covenanted to send them to school, teach them the farming trade and board them.

The principal controversy was in relation to the agreements between the father and his sister relative to the boys; the district contending and offering evidence tending to prove that the agreement and indenture were collusive and fraudulent as to the district, the substantial purpose of both being to enable the boys to attend the school in district number one.

The court charged the jury that presumptively, and until proof of the contrary appeared, the boys were to be considered as residents at the place where their father resided with his family. That, ordinarily, actual residence was all that was required to entitle persons of suitable age to attend the school. But if it appeared that they had taken up such residence for the purpose of going to the school, it was a fraud upon the district, and did not entitle them to attend the school; and that it made no difference if they were to render some trivial services to the persons with whom they lived. That no persons have a right to receive children into their family for the purpose of sending them to the school in their district, and the children so received would not in consequence have a right to attend the school. That if the evidence satisfied the jury that the indentures were made substantially for the purpose of enabling the children to attend the school in district number one, and nothing more, they were void as regarded the district, and the boys, though residing at their aunt's, ostensibly under those indentures, were not entitled to attend the school. And that the defendants, if they had no right to attend the school, were trespassers if they entered the school-house, after being notified by the prudential committee not to do so.

To these instructions the defendants excepted, and the jury found a verdict for the plaintiffs.

The defendants' counsel then moved that the verdict might be set aside by reason of the foregoing exceptions, and also, " because," after the jury had, as usual, been permitted by the court to seal up their verdict and separate, the evening before, " the court refused a poll of the jury at the time of returning the verdict and before the same was recorded," and " because," after the case had been committed to the jury and while they

were considering the same, "they communicated to the court the number who were for the plaintiffs and the number who were for the defendants, and that, after such information, they were further kept together many hours, making, in all, more than twelve hours, without any refreshment whatever," no wish having been suggested by them or the counsel in the case that they should be furnished, "until they agreed, though the jury had twice informed the court that they could not agree."

The questions arising in the case were transferred to this court for decision.

*Clark*, and *J. S. Wells*, for the defendants.

1. The town meeting on November 3, 1828, was not legally warned. The return on the notice was insufficient. N. H. Laws, 1830, p. 432; *Proprietors of Cardigan* v. *Page*, 6 N. H. Rep., 182; *Nelson* v. *Pierce*, 6 N. H. Rep., 194; *Johnson* v. *Dole*, 4 N. H. Rep., 478.

2. The limits of the district were not defined. "One half of lot twenty-seven." Which half? "And part of sixty-seven, lying east of the pond." Which part? And similar defects in other parts of the description. N. H. Laws, 1830, p. 432, § 1.

There was no evidence that the two of the committee who did not sign, were present and acted in the matter of division. All should have been present. If A. B. and C., are empowered by an act of the Legislature to issue their warrant for the collection of a tax, the power is joint and must be executed by all. 1 D. Chipman's Rep., 127; 6 Mass. Rep., 496.

3. The evidence of the doings of the meeting of June 20, 1850, was intended and undoubtedly had an influence in the trial. And being subsequent to the commencement of the suit was not admissible. *Ford* v. *Philips*, 1 Pick. Rep., 203.

4. Actual residence entitles a child to attend the public schools. These children, being under fourteen years of age, were not responsible for the intentions or designs of the father or aunt. They were placed to live in the district and were actual residents therein. The father had lawful authority to place them there, without their consent. They were under the

absolute power of the father and aunt, and cannot be responsible in the case. Rev. Stat., 150, §7; do., 302, §1; 3 N. H. Rep., 124; 8 Pick. Rep., 392; 7 Mass. Rep., 145.

5. The defendants had a right to a poll of the jury. *People* v. *Denton*, 2 Johns. Cases, 276; 3 Cowen's Rep., 23; 2 Johns. Rep., 32; Dyer, 204; 6 Johns. Rep., 68; 11 Pick. Rep., 501; Co. Litt., 227, b. At any rate the court should have instructed the jury, when the motion for the poll was made, that they then had a right to express their dissent to the verdict.

6. The communication of the jury with the court was wrong; and their subsequent detention, to procure a verdict, unjustifiable. 18 Johns. Rep., 203; 2 Johns. Cases, 309; 22 Maine Rep., 341. In *Sargent* v. *Roberts et al*, 1 Pick. Rep., 341, the court say, "We are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury after the cause has been committed to them, unless in open court."

*Hobbs*, and *Sanborn*, for the plaintiffs.

1. The defendants, by pleading the general issue, admitted there was a district capable in law of suing. If the defendants would dispute the existence of the district, they should have called for the authority of the counsel to appear for the district, or have pleaded in bar that there was no such district in existence. *School District No. 1, in Orange* v. *Blaisdell*, 6 N. H. Rep., 197; *Proprietors of Concord* v. *McIntire*, 6 N. H. Rep., 527.

2 The limits of the district were defined by the vote of the town at the adjourned meeting, when the town voted to accept the report, and that the town be considered divided into ten school districts, butted and bounded as reported by the committee. *School District No. 2, in Alton* v. *Gilman*, 3 N. H. Rep., 168. But the general issue admits the limits of the district. It admits a corporation. The limits need not have been put into the case.

3. The fourth position of the defendants assumes, as a fact, that the father placed the children in the district for a *bonâ fidé*

purpose. This the jury by their verdict have negatived. They have found that the father intended to practice a fraud upon the district. The authorities of the defendants do not sustain their position. They do not apply.

4. The doings of the meeting of June 20, 1850, were admissible to show that the prudential committee had authority to prosecute the action, being, among other things, a ratification of his previous acts.

5. In New-York, as in England, the jury may be polled. But this practice has never been adopted in this State, and so far as we know, not in any of the New-England States. In *Lawrence* v. *Stearns*, 11 Pick., 501, the jury were not polled. The verdict had not been reduced to writing and sealed up as in the case at bar. One of the jurors dissented from the verdict after the jury had separated, so no verdict could be returned. No allusion is made to polling the jury. In the case at bar, the jury returned their verdict and assented to the same in the usual form, before the poll was demanded; though this perhaps does not distinctly appear by the case.

In Massachusetts, it has been decided that the jury should not be polled, and if the jury affirm the verdict in the usual manner it is sufficient. *Ropps* v. *Barker et al*, 4 Pick., 239; *Commonwealth* v. *Roby*, 12 Pick., 496.

6. There was no communication from the court to the jury; no impropriety or irregularity for which the verdict can be set aside. *Commonwealth* v. *Roby*, 12 Pick., 496.

EASTMAN, J. The evidence introduced to show the due organization of the district was unnecessary. Pleading to the merits admitted the competency of the plaintiffs to sue in the capacity in which the suit was brought. If in a suit by a corporation the defendant pleads the general issue, it is an admission of the corporate existence of the plaintiffs and they need not prove it. If a defendant wishes to contest the existence of the corporation, he should plead that there is no such corporation in existence. *School District* v. *Aldrich*, 13 N. H. Rep., 139; *School District* v. *Blaisdell*, 6 N. H. Rep., 198. We

are aware that a different rule exists in New-York, and that, notwithstanding a plea of the general issue, the plaintiffs, suing as a corporation, must show their corporate existence. But the precise question raised in this case, was decided in *School District* v. *Blaisdell*, 6 N. H. Rep., 197 ; and the principle there adopted, again sanctioned in *Concord* v. *McIntire et al*, 6 N. H. Rep., 527, and we see no good reason for departing from the doctrine of those cases. If the legal character of the plaintiffs is in controversy, there would seem to be a peculiar fitness in having that question settled upon a proper issue made, before proceeding to an investigation of the general merits of the case. A uniform rule in this respect, applicable alike to corporations and individuals, appears to us by far the most preferable.

The doctrine of our reports upon this point is sustained by many authorities in other States. *Savage Man. Co.* v. *Armstrong*, 5 Shepl. Rep., 34 ; *Proprietors of Monumoi Great Beach* v. *Rogers*, 1 Mass. Rep., 159 ; *Phenix Bank* v. *Curtis*, 14 Conn. Rep., 437 ; *Zion Church* v. *St. Peter's Church*, 5 Watts & Serg. Rep., 215 ; *Methodist Episcopal Church* v. *City of Cincinnati*, 5 Ham. Rep., 286 ; *Whittington* v. *Farmer's Bank*, 5 Har. & J. Rep., 489 ; *Taylor* v. *Bank of Illinois*, 7 Monroe's Rep., 584.

But even if the plaintiffs were bound to show a corporate existence and the boundaries of a district legally established, we are not prepared to say that the evidence introduced was not competent to prove the fact. It is true, that the return, stating that the notification had been posted up fifteen days prior to the meeting, according to law, was insufficient. But after action by the town under the warrant and the lapse of more than twenty years thereafter, the court will not presume that the notice was not in fact legally posted up. From analogy to the statute of limitations, meetings of proprietaries and corporations are in many instances presumed to have been duly notified and held, after the lapse of twenty years. *Copp* v. *Lamb*, 3 Fairfield's Rep., 312 ; *Soc. for prop. the Gospel* v. *Young*, 2 N. H. Rep., 311. Had any objection arisen at the time the meeting was held, the form of the return could have been changed.

Upon the same principle, the court will not presume, after the lapse of twenty years, that all the members of the committee were not present and did not attend to their duties in the division of the town into districts. Seven out of the nine composing the committee signed the report, and upon general principles that would be abundantly sufficient. Besides it was the vote of the town upon the report of the committee that established the district.

The description of the district was territorial, and unless the boundaries are void for uncertainty, it is well enough. Several of the boundaries are rather indefinite but we think they would answer in the absence of any contradictory evidence. "Sixty-six acres off the easterly end of sixty-five," and similar expressions, must be understood to mean sixty-six acres taken off by a line parallel to the easterly end. "One half of twenty-seven" would probably be fatal, were it not that it is matter of general history and notoriety that the town of Milton was set off from the town of Rochester, and the court will not presume that the other half of twenty-seven is not in the latter town. If so, one half of twenty-seven would be all that is within the limits of Milton.

Inasmuch however as the defendants have pleaded to the merits, they are estopped from excepting to the legal character of the plaintiffs; and it is therefore unnecessary to examine these questions any further. The plaintiffs were in possession of the school-house and have a *primâ facié* right to maintain an action against all who illegally trespassed upon them. The evidence of the doings of the district after the commencement of the action, was incompetent. As a general principle, evidence arising *post litem motam* is inadmissible, and the right of a party to recover must be tried by its validity at the time the action was commenced. *Ford* v. *Philips,* 1 Pick. Rep., 203. But we do not see how this evidence could have any effect with the jury. It was not pertinent to the issue. It showed merely, what is always presumed, that the plaintiffs were in earnest in prosecuting the suit. The evidence must be considered immaterial, and for the introduction of immaterial evidence a verdict

will not be set aside. *Hamblett* v. *Hamblett*, 6 N. H. Rep., 333 ; *Clement* v. *Brooks*, 13 N. H. Rep., 92.

On reading the instructions of the court to the jury, our first impression was, that they were erroneous; but upon a more careful examination, we are satisfied that they were correct. Some of the remarks, when considered independently, might perhaps be exceptionable ; but when the whole instructions are taken together, it is quite apparent that the plaintiffs' right of recovery was placed upon the ground of fraud by the father, in sending his children to reside in the district with the intent of evading the statute. The statute provides that no person shall have a right to send to, or receive any benefit from any school in a district in which he is not a resident, without the consent of such district. Rev. Stat., chap. 73, § 7. And if the jury were satisfied,—as we think they must have been, under the instructions given,—that the indentures were made for the purpose of giving the boys an ostensible and not a substantial residence in the district, and for the purpose of evading the statute, the residence could give them no right to attend the school. This view of the matter does not in any way conflict with the right of the father to bind out in good faith, his minor child ; nor does it impair the rights of the master or servant, where the indentures are honestly made.

But it is further objected on the part of the defendants, that being minors, they were not liable to an action. This position cannot however be sustained. Infants are liable in cases arising *ex delicto*, whether founded on positive wrongs, as trespass or assault, or constructive tort or frauds. 2 Kent's Com., 241 ; *Bullock* v. *Babcock*, 3 Wendell's Rep., 391 ; *Hawks* v. *Deal*, 3 McCord, 257 ; *Fitts* v. *Hall*, 9 N. H. Rep., 441 ; *Lewis* v. *Littlefield*, 3 Shepl., 233 ; *Badger* v. *Phinney*, 15 Mass. Rep., 359. And in *Humphrey* v. *Douglass*, 10 Vermont Rep., 71, it was held that a minor was answerable for a trespass committed by him, although he acted by command of his father.

The remaining questions presented in the case, relate to the proper practice to be pursued after a cause has been committed to the jury and they have retired to their room. Whatever may

be the practice in other jurisdictions, and we are aware that it varies in different States, we consider it too well settled here to undertake to disturb it. The court may communicate with the jury after its adjournment, upon their request, so far as to give them instructions upon matters of law, although the counsel of the parties are not present. The communications are in the nature of new instructions and should be in writing, and returned by the jury, on their coming into court, with the papers of the case. *Shapley* v. *White*, 6 N. H. Rep., 172. If there is any error in the new instructions, the parties have their remedy by exception, in the same manner as if they had been given in open court. By this course, cases are often terminated that otherwise would not be, and injustice is done to no one.

The broad rule laid down in *Sargent* v. *Roberts & al.*, 1 Pick. Rep., 342, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them, unless in open court, is not recognized, in this State.

The length of time that a jury shall be kept together and whether they shall be discharged or not without agreeing upon a verdict, must be left to the sound discretion of the court before whom the cause is tried. To say that a jury shall not be discharged until they agree, or that they shall be discharged whenever they state that they cannot agree and desire to be discharged, are propositions that have never been adopted in our practice. While the doctrine of compelling a jury to unanimity by hunger and fatigue may well be characterized as monstrous; that of suffering them to separate upon every representation that they cannot agree, may perhaps, with equal truth, be denominated trifling. A capricious, caveling and obstinate juryman not unfrequently takes the position, at the outset, that the jury cannot agree, that he may accomplish his wishes ; and if any time were fixed beyond which a jury should not be kept together, or if this court should undertake to interfere with the discretion of the court below, in regard to their powers in this respect, unless a flagrant case of injustice was made to appear, we apprehend that in very many cases no verdict would ever be

obtained. Our jurors are generally intelligent and honest men, and cases sometimes arise where a conscientious difference of opinion may well exist in regard to the proper verdict to be returned. The evidence may be very evenly balanced, or some parts of it may strike a portion, of the jury with much more force than it does the rest. The court who have heard all the evidence can best judge whether the disagreement proceeds from an honest difference of opinion or from some less worthy cause· At all events, they are ͵in a far better position to decide the matter than the court above. In the case of *The People* v. *Olcott*, 2 Johns. Cases, 301, it was contended, that the jury ought not to have been discharged. *Kent*, J., remarking upon the case, observes : " Every question of this kind must rest with the court, under all the particular or peculiar circumstances of the case. There is no alternative ; either the court must determine when it is requisite to discharge, or the rule must be left inflexible, that after the jury are once sworn and charged, no other jury can in any event be sworn and charged in the same cause." Aud again: " The circumstances constituting a case proper for the discharge of a jury, must be more accurately perceived or more justly felt by the court before whom the trial is had than by any other court. It must therefore be a pretty clear case of an abuse of discretion to induce me to say, the court below ought not to have discharged the jury."

In the case before us, it is contended that the court ought to have discharged the jury ; and it is said that the detention was unjustifiable. But we find nothing in the facts reported that sustains such a position. We discover nothing that looks like an abuse of power, nor anything that indicates a departure from a proper exercise of a sound discretion.

Nor was there anything unprecedented or illegal, according to the practice in this State, in the refusal of the court to have the jury polled. In England, and also in New-York, and perhaps in some other jurisdictions in this country, it is the practice in some cases to poll the jury. But we are not aware that it has ever been adopted in any of the New-England States. The point has been distinctly settled in Massachusetts, as appears

by the authorities cited by the plaintiffs' counsel. *Ropps* v. *Barker & al.*, 4 Pick. Rep., 239; *Commonwealth* v. *Roby*, 12 Pick. Rep., 496. We have never adopted the English practice in this respect, and do not incline to make an innovation at this time, especially as we do not think the ends of justice in this State would be promoted by the change.

The fact that the jury had separated after their agreement, and returned a sealed verdict into court, is certainly no argument in favor of a poll of the jury. By the consent of parties, it is the uniform practice in this State, upon the adjournment of the court, to say to a jury to whom a civil case has been submitted, that as soon as they have agreed, they may reduce their verdict to writing and seal it up, and then separate and come in upon the reassembling of the court. This practice operates well for the convenience and comfort both of the court and jury and is prejudicial to the rights of no one. But were we, after such an agreement and separation and the consequent exposure of the members of the jury to be talked and tampered with, by witnesses, parties and their friends, to allow a poll, it would not unfrequently happen, we apprehend, that some one of the jury might be induced to change his views, and upon a poll disavow his agreement to the verdict; and thus might the whole labor of the trial be lost, and injustice in some instances be done.

The opinion of the court is, that the exceptions must be overruled, and that there must be

*Judgment on the Verdict.*